**FRIDLEY**

v.

**DUTY, d.b.a. Edco Automotive, Inc., et al.**

Sidney Municipal Court.

No. 94 CVE 00047.

Decided Feb. 22, 1995.

*Michael Boller*, for plaintiff Rex G. Fridley.

*Frank Patrizio,* for defendants Earl Duty and Motorists Mutual Insurance Company.

---

DONALD G. LUCE, Judge.

This matter came before the court on plaintiff's motion for prejudgment interest and attorney fees.

It should be noted that the named defendant, Earl Duty, d.b.a. Edco Automotive, Inc., is not the real party in interest for the purpose of these motions. Rather, the real party in interest is Motorists Mutual Insurance Company ("Motorists"), defendant's insurance carrier which provided the defense in this case.

A review of the case history is imperative. On December 2, 1993, plaintiff, *pro se,* instituted a small claims action in Sidney Municipal Court, claiming damages in the amount of $1,950.91 for faulty repair work to plaintiff's vehicle. Motorists undertook the defense and moved to transfer the action to the court's regular docket, which was accomplished on January 10, 1994. A jury trial was demanded.

The matter proceeded through a number of pretrial discovery actions, including two pretrial conferences and depositions. Plaintiff's counsel invited settlement, but no offer was forthcoming. A jury trial was held on October 20, 1994, at which time judgment was awarded to plaintiff as originally demanded.

The claim itself was for property damage, *i.e.,* damage to the engine of plaintiff's vehicle. There was no personal injury component. The facts are as follows:

A. Plaintiff brought his vehicle to defendant's place of business to have the carburetor replaced with a rebuilt carburetor;

B. After the job was completed, plaintiff picked up his vehicle from defendant's place of business;

C. As plaintiff left defendant's place of business, he noticed a "pinging" sound as the engine started up;

D. Plaintiff drove the car two or three miles to Presser's Auto Parts to return the old carburetor;

E. As plaintiff restarted his vehicle on leaving Presser's Auto Parts, he again noticed a pinging sound and after about five to ten seconds the engine quit;

F. The engine was later torn down and a carburetor screw was found embedded in a piston, which was now cracked in two places;

G. The cost of repair was $1,950.91 and the issue of damages was never in dispute;

H.   The only issue tried to the jury was that of liability.

The post-trial motions were set for hearing on December 9, 1994, and Elmer D. Croskey, defendant's insurance adjustor, testified regarding his evaluation of the claim.   Croskey testified that in his opinion the occurrence could have happened in only one of two ways, *i.e.:*

1.   The screw fell into the engine when defendant changed the carburetor;

2.   The screw came from the air filter and fell into the engine.   (Note: There was some testimony that plaintiff, at Presser's Auto Parts at the time when the engine quit, removed the air filter in an effort to discover the problem.   However, the uncontroverted evidence was that the culprit was a carburetor screw and not an air filter screw, which has a different configuration and identity.)

In evaluating whether Motorists acted in good faith in attempting to settle this case, the court finds Croskey's testimony of great import.   Croskey testified that he thought either of the above alternatives was just as likely, that these two alternatives were exclusive as to any other cause and therefore assigned a fifty-fifty probability as to the likelihood of these two alternatives.

Notwithstanding Croskey's assessment of the claim, it is the court's judgment, given the evidence adduced at trial, that the event was such that it could not and did not involve any act of commission or omission by plaintiff.   Given the pretrial discovery, the relevant facts were known by the parties prior to trial, *i.e.,* that the damage to the engine came from a carburetor screw, that the carburetor screw came from the carburetor, and that the only logical time that the screw could have entered the engine was while the carburetor was being replaced by defendant.   There was a great deal of evidence that plaintiff never even touched the carburetor.

Therefore, any reasonable assessment of the claim required the conclusion that defendant was liable.   It is the court's judgment that, after reviewing all the evidence, proof existed as to defendant's liability not only by the preponderance of the evidence—the relevant standard—but by proof commonly associated with a criminal case, *i.e.,* beyond a reasonable doubt.

The defense accumulated $3,290 in attorney fees and $620.90 in defending the claim, exclusive of court costs.

It is stipulated that plaintiff incurred 34.7 hours of attorney's time at $90 per hour for a total of $3,123.   Court costs totaled $539.

The question then arises why Motorists would incur almost $4,000 in attorney fees and expenses in defending a $1,950 claim with little or no question as to liability and take up the good time of eight jurors, who spent a day trying the case.

Plaintiff asserts that the true reason is to force individuals who cannot afford attorneys to give up otherwise valid claims. Plaintiff further asserts that it is the stated policy of Motorists to refuse to settle any case and to demand a jury trial in every case regardless of amount, in the absence of clear-cut liability.

In this regard it is instructive to review a past case defended by Motorists and tried by jury in this court on February 22, 1994 to see if any pattern presents itself.

The court takes judicial notice of the case of *Kinsella v. Osborne* (Feb. 22, 1994), No. 93 CVE 00338, unreported. *Kinsella* involved an automobile accident. Damages were stipulated as follows:

1. Plaintiff, Cincinnati Insurance Company, $2,615.13;
2. Plaintiff, Daniel J. Kinsella, $500;
3. Defendant/counterclaimant, Motorists, $1,300;
4. Defendant/counterclaimant, Tina Osborne, $200.

The sole question was whether the plaintiff or the defendant had the green light. The plaintiff and the defendant had different recollections, but the plaintiff produced an independent eyewitness, who was sitting on a swing in his yard facing the intersection where the collision occurred and who was a short distance away from the scene. The accident took place during the daytime in fair weather conditions. There were no impediments to the witness's power of observation. The witness stated unequivocally that the plaintiff had the green light. A jury verdict for the plaintiff was returned after approximately two hours of deliberations. No request was made for post-trial relief and so it is not known what attorney fees and expenses were incurred, but it could reasonably be estimated to be approximately the same as the instant case.

In *Kinsella*, as well as in the instant case, the court finds little or no question of liability. There was no real question of the result being a plaintiff's verdict.

*Kinsella*, as well as the case at bar, supports plaintiff's contention that the real purpose behind the actions of Motorists is something other than promoting justice and the proper use of scarce judicial resources to resolve legitimate questions of fact. The court notes in passing that its yearly docket exceeds 9,000 cases.

The inescapable conclusion is that Motorists practices a policy to purposely frustrate legitimate claims, thereby forcing many individuals to give up otherwise valid claims. Perhaps this type of action is thought to improve the company's profit margin, but if this is the case, it comes at a high price, *i.e.*, at the expense of fairness and the integrity of the judicial institution. In this regard, the court is used in a manner that inhibits rather than promotes justice.

■    Therefore, the court finds that the statutes cited by plaintiff are applicable in this circumstance.  Specifically, the court finds that Motorists failed to make a good faith effort to settle the case, in fact made none at all, and that the plaintiff is entitled to prejudgment interest pursuant to R.C. 1343.03(C), to wit, interest at the legal rate shall be computed from the date the cause of action accrued.

■    Further, under the facts of this case, the court finds that the actions of Motorists served obviously to harass the plaintiff, the object being to force plaintiff through economic pressure to dismiss the claim.  Therefore, the court finds that Motorists engaged in "frivolous conduct" as that term is defined in R.C. 2323.51 and awards attorney fees in the amount of $3,290.

*So ordered.*